UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-80150-ROSENBERG/REINHART

D.S. EAKINS CONST. CORP.,

      Plaintiff,

v.

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

      Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Defendant Travelers Property Casualty Company of America's Motion for Summary Judgment, DE 22. The Court has reviewed the Motion, Defendant's Statement of Facts at DE 23, Plaintiffs' Response to the Motion and Statement of Facts at DE 25 and DE 26, and Defendant's Replies to those Responses at DE 31 and DE 32. The Court has also reviewed the record and is otherwise fully advised in the premises. For the following reasons, the Court **GRANTS** the Motion and enters summary judgment in favor of Defendant. Defendant is entitled to summary judgment in its favor because Plaintiff's claims find no support in the contract governing the dispute.

## I.    BACKGROUND

This is a dispute about certain provisions of an insurance contract between Plaintiff D.S. Eakins Construction Corporation ("Eakins") and Defendant Travelers Property Casualty Company of America ("Travelers"). The following facts are undisputed. Eakins contracted with Travelers for insurance coverage for two wheel loaders, "a 2022 CAT 980, with serial number MK700366 (the '2022 CAT'), and a 2019 CAT 980, with serial number MK21084 (the '2019 CAT')." DE 23

at ¶ 2.  The relevant policy number QT-660-5N307615-TIL-22 ("the Contract"), was in effect between Eakins and Travelers from March 25, 2022, to March 25, 2023. *Id.* at ¶ 3.

The Contract contained a Declarations page outlining "various limits of insurance for different types of Covered Property." *Id.* at ¶ 5.  One type of Covered Property is Scheduled Equipment, of which the Contract also included a list of Scheduled Equipment by name, serial number, and insured value. *Id.* at ¶ 3; DE 23-2 at 108.  Eakins listed the 2019 CAT, the wheel loader that it owned, for $487,507. *Id.* at ¶ 12.  But Eakins did not list the 2022 CAT, the wheel loader that it was leasing. *Id.* at ¶ 14; DE 32 at ¶ 11.  Instead, the 2022 CAT was another type of Covered Property: Unscheduled Owned Equipment Owned by Others. *Id.*

On August 5, 2022, a fire destroyed both the 2019 CAT and the 2022 CAT and damaged the concrete structure in which they were stored. *Id.* at ¶ 2.  The fire was a covered event under the Contract, DE 32 at ¶ 48, and therefore Travelers made a series of payments to Eakins.  Travelers paid the full value of the 2019 CAT based on the most recent list of Scheduled Equipment. DE 23 at ¶ 13.  For the 2022 CAT, Travelers paid $400,000, the policy limit for Unscheduled Equipment Owned by Others. *Id.* at ¶ 14.  Pursuant to the contract's Additional Coverage for Debris Removal provision, Travelers also paid Eakins' $6,000 to remove both wheel loaders from the concrete structure. *Id.* at ¶ 16.  And, under the contract's Rental Equipment provision, Travelers paid Eakins $5,000, the policy limit for each rented wheel loader, while the insured wheel loaders were out of commission, amounting to $10,000 in total. *Id.* at ¶ 18.  In sum, "Travelers paid $928,507 for the Loss." *Id.* at ¶ 22.

But Eakins sought additional reimbursement payments under the Contract.  Specifically, Eakins requested an additional payment of $100,000, the policy limit for the Contract's Errors or Unintentional Omissions ("EOU") provision, to cover more of the 2022 CAT's value. DE 1-1 at

¶¶ 15–19.  Eakins also requested reimbursement approval for the estimate to remove the concrete structure that stored the wheel loaders under the Contract's Debris Removal provision. *Id.* at ¶¶ 27–33.  Lastly, Eakins requested greater reimbursement for the costs of rental wheel loaders used to replace the destroyed wheel loaders under the Contract's Rental Costs provision. *Id.* at ¶¶ 20–24.[1]

When Travelers denied those requests, Eakins initiated this suit against Travelers.   For each of the three areas in which it seeks additional compensation, Eakins' Complaint seeks a declaratory judgment and damages for breach of contract. DE 1-1 at ¶¶ 36–74.

Travelers has moved for summary judgment against all claims, arguing that the EOU provision does not apply to the 2022 CAT, no additional payments are due under the Debris Removal provision, and no additional payments are due under the Rental Costs provision. DE 22.

## II.    LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A fact is material if "it would affect the outcome of the suit under the governing law." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247–48).  And an issue of material fact is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Id.* (citing *Anderson*, 477 U.S. at 247–48).

---

[1] Though the request was not included in the Complaint, Travelers' Motion for Summary Judgment also addressed Eakins' alleged request for extra compensation for upgrades to construction equipment. DE 23 at 18–19.  Eakins subsequently clarified that it is not making a claim for the upgrade. DE 26 at ¶ 36. Therefore, the Court's Order does not address that issue.

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  Once the moving party satisfies this burden, "[t]he non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof." *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, to show that a reasonable jury could find in favor of that party. *See Shiver*, 549 F.3d at 1343.  In deciding a summary judgment motion, the Court views the supported facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).

Since the Court's jurisdiction is based on diversity of the parties, Florida law determines the Court's substantive analysis. *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004).  For a plaintiff to establish a breach of contract claim, they must establish a valid contract, a material breach of said contract, and resultant damages. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (applying Florida law).

In interpreting the terms of insurance contracts, Florida courts consider "the insurance policy as a whole and give every provision its 'full meaning and operative effect.'" *Id.* (quoting *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1186 (11th Cir. 2002)).  Courts begin with the policy's plain meaning "as bargained for by the parties." *Auto–Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000).  If the relevant language is unambiguous, "it governs." *Steinberg*, 393 F.3d at 1230.  "If the relevant policy language is susceptible to more than one reasonable interpretation"—with "one providing coverage and the other limiting coverage"—, the

relevant language is ambiguous.  *Id.*  That ambiguity must be "interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy." *Anderson*, 756 So. 2d at 34.

Elaborating further, the Florida Supreme Court held that even if a term is undefined, it is not necessarily ambiguous. *State Farm Fire & Casualty Co. v. CTC Development Corp.*, 720 So. 2d 1072 (Fla. 1998).  Neither is a term necessarily ambiguous if it appears in a complex provision and "requires analysis for application." *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003).  The same term can also be used in different contexts without necessarily being ambiguous. *Id.* at 166 After using "the ordinary rules of construction," there must be a genuine inconsistency, uncertainty, or ambiguity in meaning." *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 942 (Fla. 1979).

## III.   ANALYSIS

The Court identifies the following issues in dispute:

(A)  Does the Contract's EOU provision provide additional reimbursement for the loss of the 2022 CAT?

(B)  Does the Contract's Rental Costs provision provide additional reimbursement for the costs from renting replacement wheel loaders?

(C)  Does the Contract's Debris Removal provision provide reimbursement for concrete structure removal?

## A.   Does the Contract's EOU provision apply to the 2022 CAT?

Travelers argues that summary judgment must be entered in its favor as to Count I and IV because the EOU provision does not apply to the 2022 CAT.  The EOU provision provides as follows:

**A. COVERAGE**

. . .

**5. Additional Coverages**

. . .

**f. Errors Or Unintentional Omissions**

> If an item of equipment is *not covered under this Coverage Form* due solely to your *error or unintentional omission in failing to include the item, describing the item* or describing the location of where the item is physically located, we will extend the insurance provided by this Coverage Form to apply to direct physical loss of or damage to such item caused by or resulting from a Covered Cause of Loss. Any such error must be reported and corrected when discovered. We will charge you additional premium.
>
> *The Errors Or Unintentional Omission Limit Of Insurance shown in the Supplemental Declarations is the most we will pay in any one occurrence under this Additional Coverage.*

DE 23-1 at 56 (emphasis added).

Travelers highlights three phrases or sentences within the EOU provision to support its conclusion that the provision does not apply to the 2022 CAT.  First, the EOU provision only applies to equipment "not covered" elsewhere in the Contract; since the 2022 CAT was covered, EOU coverage is inapplicable. DE 22 at 12.  Second, even if the EOU provision applies to equipment covered elsewhere in the Contract, Eakins' error related to requesting coverage for the 2022 CAT did not meet the condition precedent for EOU coverage of failing to include or describe the item. *Id.* at 12–13.  Instead, Eakins Vice President admitted the company's error was in failing to purchase enough coverage for an included item. *Id.* at ¶ 26.  And third, the EOU provision prohibits its use on top of any other provision of insurance coverage for the same purpose (e.g., reimbursing the value of covered item)—a process called stacking. DE 22 at 14.

In response, Eakins claims that the EOU provision can apply to equipment insured through other provisions because "covered" is ambiguous and contractual ambiguities should be resolved in favor of the non-drafter. DE 25 at 7.  Eakins also claims that its error meets the condition precedent for EOU coverage because it failed to include the item in the list of Scheduled Equipment and failed to describe the full value of the 2022 CAT.  DE 26-1 at ¶ 13. Eakins claims

this is enough to satisfy the condition precedent for EOU Coverage. DE 25 at 6–7.  Lastly, Eakins

claims the EOU provision's language does not prevent stacking. *Id.* at 10.

The Court begins its analysis with whether the EOU provision's use of "covered" is

ambiguous, examining the plain meaning of the word within the context of its usage in the

Contract.  Notably, "covered" is not modified by words such as "fully," "partially," or any other

word that may render relevant the amount of an item's value that must be insured.  But, the context

in which the word "covered" is used: "[i]f an item of equipment is not covered under this Coverage

Form," DE 23-1 at 56, clarifies that EOU provision considers the coverage status of an item of

equipment.  Also, the provision indicates that coverage status is relational— it looks to "this

Coverage Form" to determine whether something is covered or not.  "[T]his Coverage Form" is a

reference to a specific part of the Contract.  The Contract's table of contents is entitled a "Listing

of Forms, Endorsements and Schedule Numbers," DE 23-1 at 21, evidencing that the Contract

includes forms within it.  In fact, the document containing the relevant EOU provision is the

"Contractors Equipment Coverage Form." *Id.* at 53.  The Contract also includes the "Installation

Coverage Form." *Id.* at 21.  Therefore, to determine whether the EOU provision applies, the Court

must consider whether an item is "covered" under the Contractors Equipment Coverage Form.

Section A of the Contractors Equipment Coverage Form, which includes the EOU

provision, defines whether an item is covered.  The provision reads:

**A.  COVERAGE**

. . .

**1. Covered Property**

**a.** Covered Property, as used in this Coverage Form, means contractors equipment
or other types of specialized machinery, equipment and tools, including
attachments and accessories to such contracts equipment, machinery, equipment
and tools, used in your business operations. *We cover such property that is*:

7

(1) Owned by you, including while leased, rented or loaned to others; or

(2) Owned by others while in your care, custody or control and that you have leased, rented or borrowed;

*If a Limit of Insurance is shown in the Declarations for the applicable Covered Property.*

DE 23-1 at 53 (emphasis added).  Similar to the EOU provision, the Covered Property provision

does not state that coverage status depends on whether an item is fully insured for its value.  Rather,

it states that property cannot be covered without a corresponding Limit of Insurance for the

applicable type of Covered Property in the Declarations, as set forth below.



**TRAVELERS**                                                 One Tower Square, Hartford, Connecticut  06183

COMMERCIAL INLAND MARINE                          POLICY NUMBER: QT-660-5N307615-TIL-22
COVERAGE PART DECLARATIONS                      ISSUE DATE: 12-09-21

INSURING COMPANY: TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

DECLARATIONS PERIOD: From 03-25-22    to 03-25-23    12:01 A.M. Standard Time at your mailing address shown in the Common Policy Declarations.

The Commercial Inland Marine Coverage Part consists of these Declarations, the Commercial Inland Marine Conditions Form and the Coverage Forms shown below.

## CONTRACTORS EQUIPMENT COVERAGE FORM

I.   **COVERAGE AND LIMITS OF INSURANCE**

    A.  **Covered Property**
        Covered Property consists of the following indicated by an 'X':

        1.  [X] **Scheduled Equipment:**
            [ ] As shown on the Contractors Equipment Item Schedule, which includes the Limit of Insurance applying to each listed item of equipment.
            [X] As shown on the most current schedule on file with us. The amount shown on such schedule for each item of equipment is the Limit of Insurance applying to that item.
            Total Limit Of Insurance For All Scheduled Equipment:                                  $ ▮▮▮▮▮▮

        2.  [X] **Unscheduled Owned Equipment**
            Total Limit Of Insurance For All Unscheduled Owned Equipment:         $ 10,000
            Limit Of Insurance For Any One Unscheduled Owned Item Of Equipment:   $ 5,000

        3.  [X] **Unscheduled Equipment Owned By Others**
            Limit Of Insurance For Any One Unscheduled Item Of Equipment
            Leased, Rented Or Borrowed From Others:                                        $ 400,000

        4.  [X] **Equipment While Leased, Rented Or Loaned To Others**
            Limit Of Insurance For Any One Item Of Equipment
            Leased, Rented Or Loaned To Others:                                             $ 250,000

    B.  **Total Limit Of Insurance For All Items Of Equipment In Any One Occurrence:**                                                                     $ ▮▮▮▮▮▮

DE 23-1 at 30.[2]

Altogether, these provisions elucidate that the EOU provision's use of the word "covered" relates to whether an item is insured at all according to the Declarations.  If an item is insured by the Declarations, it is covered.  If an item is not insured by the Declarations, it is not covered.

The parties agree that the Declarations page insures Unscheduled Equipment Owned by Others.  The parties agree that, as Unscheduled Equipment Owned by Others, the 2022 CAT was insured.  So, the 2022 CAT was insured through the Declarations, and it therefore does not qualify as "not covered" according to the EOU provision.[3]  Thus, Plaintiff cannot receive reimbursement for the 2022 CAT under the EOU provision.  Summary judgment in **GRANTED** for Travelers as to Counts I and IV of the Complaint.

**B.**      **Does the Contract's Rental Costs provision provide additional reimbursement for the costs from renting replacement wheel loaders?**

The parties also dispute whether another Contract provision, the Rental Costs provision, requires Travelers to reimburse Eakins for more of the cost of renting two replacement wheel loaders than the $10,000 it paid.  The Rental Costs provision follows.

**5. Coverage Extensions**

. . .

**f. Rental Costs**

**(1)** In the event of a covered loss to Covered Property, we will pay the cost to rent *an item of equipment similar to the item that sustained loss or damage* when such rental equipment is necessary to continue your normal business operations because you do not have idle equipment that can perform the same work or function.

---

[2] The parties agree that this Declarations Page is central to any analysis of coverage for the 2022 CAT. DE 23 at ¶ 14 (Travelers includes in its Statement of Material Facts that the 2022 CAT "was covered under the Policy's limit for Unscheduled Equipment Owned by Others, which has a limit of $400,000."); DE 26 at ¶ 14 (Eakins concedes that the 2022 CAT was covered, but claims it was not fully covered for its value.).

[3]  In light of the conclusion that the 2022 is not covered under the EOU, the Court need not reach the other two arguments raised by Plaintiff for its coverage.

>    Coverage for such cost will begin immediately after the time of direct physical loss or damage and will end when either of the following first occurs:
>
>    (a) The item of equipment to which the loss or damage occurred is repaired or replaced; or
>
>    (b) The rented item of equipment is no longer needed.
>
>    The applicable Rental Costs Limit Of Insurance shown in the Supplemental Declarations is the most we will pay in any one occurrence under this Coverage Extension for the cost to rent a similar item of equipment.

DE 23-1 at 53–54 (emphasis added).

Travelers contends that "item," though not defined, is an unambiguous term in the Contract and the Contract limited the rental reimbursement to items and occurrences. DE 22 at 6–7. Thus, the Contract limits the amount Eakins can be reimbursed per item of rental coverage to $5,000. *Id.* at 17. Eakins rented two items following the fire and thus, the Contract limit it can be paid is $10,000. *Id.* Travelers paid $10,000 for the rental equipment, DE 23 at ¶ 18, and has discharged its obligation for rental costs coverage. DE 22 at 17.

Eakins concedes that the Contract's Supplemental Declarations section states that for any one rented "item," the contractual limit is $5,000, and for any one "occurrence," the rental contractual limit is $100,000. DE 25 at 11–12. But Eakins argues that the meaning of "item" is undefined and ambiguous, in that it could mean an item of damaged equipment or an item rented to replace the equipment. *Id.* at 12. Justifying this as a meaningful distinction, Eakins claims the latter meaning means that it is entitled to payment for each item per rental period until the occurrence limit. *Id.* Eakins also argues that in only mentioning the limit for occurrences in the Rental Costs provision, the Contract only limited the rental reimbursement to occurrences and not items. *Id.*

The Contract states that Travelers "will pay the cost to rent an item of equipment similar to the item that sustained loss or damage" in certain circumstances. DE 23-1 at 54. The meaning

of "item" is defined by the immediate context of each use.  The Rental Cost provision instates a one-for-one policy, under which Travelers pays for the one piece of equipment that replaces the damaged piece of equipment.  Any reading of "item" that includes per rental period lacks basis in the text.  That limiting principle is not stated or implied.  Neither is that limiting principle stated in the Supplemental Declarations, where the limits for rental coverage are per item and per occurrence.  Since it would be impermissible for the Court to "add meaning that is not present," the Court finds that the meaning of "item" related to rental costs is the rented piece of equipment without regard to the payment periods.

The Court also finds that the Rental Costs provision, in citing to the "[t]he applicable Rental Costs Limit Of Insurance shown in the Supplemental Declarations," DE 23-1 at 54, includes the limits for any one item and any one occurrence.  The Court again gives effect to the capitalization in the provision since the Contract has proven that capitalized terms are cross-references.  The Supplemental Declarations provide the following related to the Rental Costs provision:



**CONTRACTORS EQUIPMENT**
**SUPPLEMENTAL DECLARATIONS**

One Tower Square, Hartford, Connecticut  06183

**POLICY NUMBER:** QT-660-5N307615-TIL-22
**ISSUE DATE:** 12-09-21

I.   COVERAGE AND LIMITS OF INSURANCE

|  |  | Limit Of Insurance |
|---|---|---|
| **A. Coverage Extensions** | | |
| Business Personal Property In Job Trailers: | | $ 10,000 |
| Document And Data Restoration Costs: | | $ 50,000 |
| Fire Protective Systems: | | $ 75,000 |
| Hauling Property Of Others: | | $ 100,000 |
| Newly Acquired Equipment – Per Item: | | $ 250,000 |
| Rental Costs: | | |
| | a. Any One Item: | $ 5,000 |
| | b. Any One Occurrence: | $ 100,000 |
| Upgrades To Covered Property: | | $ 25,000 |
| **B. Additional Coverages** | | **Limit Of Insurance** |
| Claim Data Expenses: | | $ 5,000 |
| Continuing Rental Payments: | | |
| | a. Any One Item: | $ 25,000 |
| | b. Any One Occurrence: | $ 25,000 |

DE 23-1 at 32.  Since under the Coverage Extensions Section, the "Limit of Insurance" of "Rental Costs" includes $5,000 for any one item and $100,000 for any one occurrence, both limits are incorporated in the Rental Costs provision.

In sum, Travelers has already met its obligations under the Contract in reimbursing Eakins for $5,000 per item and is not required to reimburse Eakins for any more of the cost of rental equipment.  Accordingly, summary judgment in **GRANTED** for Travelers as to Counts II and V of the Complaint.

**C.   Does the Contract's Debris Removal provision provide reimbursement for concrete structure removal?**

Finally, the parties dispute whether a separate Contract provision, the Debris Removal provision, provides support for additional reimbursement payments.  The relevant Contract section is as follows:

**5. Additional Coverages**

. . .

**d. Debris Removal**

**(1)** We will pay your expense to *remove debris of Covered Property* caused by or resulting from a Covered Cause of Loss that occurs during the policy period.

The amount we will pay includes the increased costs you incur to divert debris of Covered Property to recycling facilities rather than landfills. Any income or remuneration derived from this recycling will reduce the amount of debris removal expense we would have otherwise paid.

The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

This Additional Coverage does not apply to costs to:

(a) Extract "pollutants" from land or water; or

(b) Remove, restore or replace polluted land or water.

DE 23-1 at 55–56 (emphasis added).

Travelers argues that it has met its obligation under this provision's terms.  It claims the concrete structure which stored the wheel loaders was not Covered Property as defined by the Contract; Eakins does not dispute this. DE 23 at ¶ 34; DE 26 at ¶ 34.  The only Covered Property were the two wheel loaders but, according to the deposition of Eakins Vice President, no "portions of the debris of the machinery [] are still under the storage structure." DE 23-3 at 95:10–12.  The Vice President admitted that in removing the wheel loaders, a piece of the structure's concrete slab underneath the loaders was also removed, but the structure remains standing. *Id.* at 95:13–17.  Since all Covered Property was removed, Travelers claims it has no further obligation under the Contract's debris removal section to reimburse Eakins for removing the structure. Id. at ¶¶ 28–30.

Eakins now claims some debris remain in the structure.  Subsequent to his deposition and in connection with responding to the Motion for Summary Judgment, Eakins Vice President averred for the first time in an affidavit that some parts of the wheel loaders remain fused to the structure. 26-1 at ¶17.  The affidavit lacks any support for this new and contradictory claim.  It

does not explain why the earlier testimony is incorrect and provides no basis for Eakins' new claim. Under Eleventh Circuit precedent, a court can consider the affidavit a sham and disregard this contradiction. *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 656 (11th Cir. 1984) ("[W]e . . . hold a district court may find an affidavit which contradicts testimony on deposition a sham when the party merely contradicts its prior testimony without giving any valid explanation."). Thus, the Court finds that Eakins' direct contradiction without any explanation cannot be used to establish a genuine dispute of fact.

The Contract's plain meaning settles the issue of whether Travelers has any further obligation to reimburse Eakins for removing the concrete structure if the debris of the "Covered Property" were already removed. In the relevant provision, Travelers "will pay [Eakins'] expense to remove debris of Covered Property." DE 23-1 at 55. By limiting the covered expenses to the cost of removing debris of Covered Property, the Contract unambiguously forecloses additional coverage under this section once all the debris have been fully removed. To require coverage of the removal of the structure contradicts the bargained for terms of the Contract. The Court concludes that Travelers has met the terms of the Contract and does not owe Eakins any additional reimbursement for debris removal related to the concrete structure. Accordingly, summary judgment in **GRANTED** for Travelers as to Counts III and VI of the Complaint.

**D.     Conclusion**

For all of the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment, DE 22, is **GRANTED** and summary judgment is entered in favor of Defendant as to all counts. The Clerk of the Court shall **CLOSE THIS CASE** and all other pending motions are **DENIED AS MOOT**. Defendant shall provide a proposed final judgment,

in Microsoft Word format, to rosenberg@flsd.uscourts.gov within three business days of the date

of rendition of this Order.

        **DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 9th day of January,

2024.

Copies furnished to:                            ROBIN L. ROSENBERG

Counsel of record                            UNITED STATES DISTRICT JUDGE